Thank you. Please call the first case of the morning. Dr. 413-0418-WC, Joan Anderegg. Appellant, v. Workers' Compensation Commission, Kelsey Jarman, Broad, Cowdley, Appalooke. You may proceed. Good morning. My name is Sandy Loeb, and I represent the plaintiff, Joan Anderegg. Ms. Anderegg's claim was brought before this Court after the Circuit Court upheld the Workers' Compensation Commission's finding that Ms. Anderegg's accident did not arise out of her employment. This Court should reverse the lower court's decision and find that the act giving rise to the accident was incidental to Ms. Anderegg's employment, and it should further find that the recreational activity exception enunciated in Section 11 of the Act does not apply to the facts of this case. The material facts of this case are straightforward and are undisputed. Ms. Anderegg was an 81-year-old legal secretary employed by the defendant law firm for 25 years at the time of her injury. The evidence is undisputed that she sustained a non-union fracture of the right proximal humerus after a fall down two steps near her head. Well, the injuries are not really in dispute. The case turns on whether or not this was something that arose out of the employment. Let me ask you. Is there any evidence that the employer had a specific policy approving the bringing of, you know, party items or food for celebrations of birthdays or promotions? No, but there is not a requirement that there be a policy. Well, I suppose, but I just want to pin it down. So this is probably, as in many places, employees can voluntarily bring things. The employer, you know, could know about it and doesn't take steps to prevent it. Is that sort of what happened here? Is that your argument, the employer knew about it but didn't do anything to prevent it? Well, that's part of it. They didn't discourage her doing it. There was a pattern of practice of the employees doing it on a regular basis. Is that enough standing alone to give her a right to recovery or must there be some benefit to the employer? A reason of the action in order for there to be recovery. Under the Act, I do believe that the Act should be in furtherance of the employer's goals. And my reading of this is that the FACAs were brought for the sole purpose of welcoming back an employee who had formally quit the employer and come back a week later. And this was to welcome her back.  Well, here's my concern. And I understand your argument. Where do you draw the line here? I mean, a birthday celebration, a grandchild, somebody's promotion. If somebody decides they're going to bring a karaoke machine into the office to have a party and they get hurt, where do you draw the line? I mean, you can say it's for the employee's benefit because of the general argument. This fosters collegiality, right, camaraderie in an office. But where do you draw the line? I mean, does the employer know every time there's going to be a celebration and because they allow a birthday celebration, every time somebody wants to celebrate a holiday for any reason, the employer is going to be liable if somebody gets injured? I mean, that's the parameter you're going to be setting there. If it is sufficiently related to the employment and does not fall under the exception that's outlined in Section 11. Well, how is voluntarily bringing baked goods incidental to your employment? She didn't bring them for herself. She brought them to share among the employees and to welcome back the co-worker who had left the employment. Obviously, that's where the employers benefit, to make sure that this employee feels comfortable returning to this environment. Social relationships are part of the office environment. We have to get along in order for the office to work productively. So if you're the employer and now you see you're going to be responsible if some employee gets injured bringing goods in too, are you going to invite employers not to have specific policies banning any type of celebration? It could be the road you're heading down. I don't think the risk outweighs the benefit for the employer. I don't think that's necessary in order to protect the employer. The act is designed to protect the employee. As long as it arises out of the corporate environment. Right, and that's supposed to be liberally construed in order to make sure that employees are protected for their injuries that occur. Even from their voluntary acts that they're doing on their own, nobody's telling them to do this. They may be voluntarily, as we've seen in the case of Kankakee County YMCA, where the employee brought a soda and a purse that happened to contain a notepad. Is that Knox County? Knox County, sorry, excuse me. Knox County versus YMCA versus the Industrial Commission at that point. That's a little different because in that situation, the claimant, because of the time constraints involved and the fact that she had to be at this CPR, mandatory CPR class, didn't have time for dinner, had to get dinner and take it with her, at least the cup of soft drink that she had. So it was because of the time constraints involved necessitated that she have it with her. This is something much different. I don't want to say much different, but this is something that is different because this is something that is purely voluntary. There wasn't any compulsion on the part of the claimant here to bring these baked goods, correct? In Knox County, I don't believe the employer compelled her to bring her dinner with her. They could have prohibited her from bringing her dinner with her. But she was compelled to be at the CPR class. That's different. If you're compelled to be at an employee-ordered function during your dinner hour, presumably you can bring something there. This had nothing to do, this was not an employer-sponsored event, was it? Did anybody tell her that she had to bring goods? It's not different than Knox County where the employer says, you've got to show up here at a certain time, it's part of your job. Isn't that a little different? Well, she had to show up at work at that period of time, and it's true that she did voluntarily add to her employment by bringing this recognition of the co-worker's return. But, again, it's for the employer's benefit. Indirectly, and that's where I think those that have worked in an office environment would share Justice Hudson's sentiment, or at least would ask the same questions about where do you draw the line? In the summertime when someone brings in garden produce to share with co-workers, ostensibly that's boosting morale and indirectly benefiting the employer. Certainly that's starting to get to the periphery here of something like Knox County. True. True. I think the difference between bringing in this set of baked goods versus produce is that the baked goods were meant to be shared on office time. There's no evidence that they're taking a break from their work in order to enjoy it. In fact, it sounds like the first person who was honoree got the chance to get the first piece, but they brought it back to their separate desks and continued with their work day. So I think there is a difference. Okay. You know, the office worker that brings in bran muffins on a daily basis to share with co-workers because it's heart healthy, certainly that's with a goal towards improving the health of co-workers. Done on a daily basis, now we're within the realm of compensability? No, because in this case she's bringing them in to welcome the co-worker back who had left. What kind of a bright line is the issue I'm struggling with? Would you ask us to adapt? Just carrying his example further, people can bring in things all the time for any reason or no reason to share with co-workers. I mean, legitimately that's the intention. Not for themselves. They come in and they put a plate of muffins or something up in the coffee room. Okay. So the line is every time somebody brings something voluntarily into the employer's place of business for any reason, ostensibly to share the goods, the largess with the other employees, the employer then, under your ruling, would automatically be liable because it benefits the employer. Correct? Is that what we should announce? It's not just the sharing. It's benefiting the employer because the goal is to make this new employee feel welcomed back. Forget about the new employee. What's the role, again, I'm asking you to draw? When is it not arising out of the employer? Because you're saying it's to make people feel good on some level. So where do we draw the line? I think you draw the line when it would clearly fall under Section 11, where the recreational activity is clearly a break or something apart from the work day and the work hours. The only case I could find where an actual party was discussed in the case law is LASI versus paper graphics, and that's 248 Illab 3rd, 621. And in that case, a holiday party on the employer's premises where a worker was injured did fall under the Voluntary They were invited to attend the party, but the employees were not required to attend the party. So they were invited but not required to attend, and they were also relieved of their duties for the day. Yeah, but that's because the employer is taking an active role. I understand if the employer says, we're going to have a retirement party today in the office for so-and-so, everybody is invited. You don't have to show up. The employer is part of the decision-making process in that event. The problem I'm having here, how would the employer even know when people are bringing things in to the portals under the rule that you're suggesting? It's a general rule. If it's brought in to benefit other workers, there should be liability from the employer. That seems to be what you're saying. If the employer is aware of the policy and allows it to occur, yes. So we're talking acquiescence, really? Yes. Okay. Is the acquiescence sufficient, or must the employer actually be the sponsor of the party? If the employer is the sponsor of the party because they want to welcome a new employee back, you have an argument that clearly the bringing in the pie advances the business and the employer because they've held the party. But in this particular case, is there any evidence that the employer had anything to do with putting this party on? No, but there was no evidence in the Lubin case that the employer had anything to do with telling their handyman to go off the premises and pick up a tenant's son. But there was testimony that going off the premises and picking up tenants was something that was regularly done by the handyman, and it was done to increase the goodwill of the employer. That's why he was doing it. In this particular case, you're not dealing with somebody outside the law firm. You're dealing with a party inside the law firm. Now, if the law firm put the party on and she brings a pie to further that, I see the argument. But if the law firm doesn't have anything to do with putting the party on, the employees themselves get together to do it, and the law firm doesn't do anything to either encourage or discourage, then the question is, are we really in the Lubin or the Knox County realm, or are we on, you know, this is just employees. No different than if I brought a sandwich for a co-employee at lunch and tripped while I was walking into the building with it. Is it really different? If you brought a sandwich into lunch, then that would be something else. It would be. Especially if I shared it with you. Put the case in a different posture. No, but I'm serious about this. If I bring a sandwich to work, a couple of sandwiches to share with a co-employee, you're not going to suggest that if I trip because I lose control of the tupperware in which the sandwich is, that that's recoverable, is it? No. Is it? I think the first question you asked me. Yes, I know. The first question you asked was whether or not the employer had anything to say about the practice. I think you were saying that in Lubin and in Panagos that the employer encouraged the activity, and I don't think there was evidence that the employer encouraged the activity. It was tacit approval. In Lubin there clearly was. In which one? In Lubin there clearly was that they not encouraged it. It had been going on for a long period of time, and he did it for multiple tenants for goodwill, for the real estate company. Can I suggest a distinction here? All the cases you've cited, even in Panagos, the belly dancer was expected to socialize with the customers. These were a part of the normal parts of the job. These activities were contemplated by the employer. They wanted this person to socialize. In Panagos the employer ordered the person to attend this function, and then, of course, the person had the right to bring some nutrition to the classes. In this case, and the rule you're suggesting, is the employer might not even know, correct, when this activity is going on and when people are bringing stuff into the employment. My understanding is that the employer participated in it. The attorneys certainly shared the baked goods as well. It was not just separate for the employees. Ms. Andrea actually testified that she brought them for everybody in the office, right? Correct. I'm sure the attorneys stopped by and got a piece of pie, too. I'm pretty sure, yes. But those are the concerns. I understand your concerns, but I do believe the law supports a finding that her accident did arise out of the employment, and I'm asking the court to reverse the lower court on this issue. Thank you. Thank you, counsel. Counsel, you may respond. Thank you. Brad Elword on behalf of Counselor Carmen Brower in Towsley. I think the court has hit the arguments on the head, and I think the question really does come down to was this an incidental activity to her employment. I think sometimes when we have conversations about arising out of the employment, we tend to use that word employment very loosely. What the cases such as CISPRO say is it's not just the employment. We're not talking about being at the job. We're not talking about a positional risk. We're talking about the employment duties, the activities that the individual is required to do. In this case, she's a secretary. She's not the morale leader of the office. She's not the person who coordinates the goodwill of the office among the staff. That would be a different situation. We'd have to explore that. She's a secretary. So she was a human resources director. It might be different. It could be different depending on the job duties, and I think that's one of the distinctions. This was not her bringing these victims in. She didn't do that 100% for her own personal benefit or as a personal thing. This was partially business, wasn't it? I don't know if I'd say partially business. I would say she brought them in for people to consume. She works here. I mean she's bringing them in to work for other people she works with to consume because of the return of a co-worker. I mean this is not just a personal thing. Like if she, for example, brought make-goods in she was going to take to her bridge group that night or something. Or she was bringing in her own breakfast. Right. You have the difference here that this benefits the staff. But we don't have a situation where these products were brought in to benefit clients. That would be a different situation that the court could explore under different grounds. But the argument that they're attempting to make is this is some type of welcome back party. There's no evidence in this record that the employer said, hey, we're really glad to have this employee back. Let's do something to celebrate this. We want you to take care of this food and this party. We don't have that. If that was the situation, we would have a harder argument upholding the decision below. Is there any evidence the record of the employer even knew specifically what was going on? No, not on a specific occasion. Other than this general, you know, it's approved kind of argument. At page 70 she says, on occasion we celebrated staff birthdays. Same page, we would celebrate by bringing in baked goods or cheese balls. There's no indication of acquiescence on this particular occasion. But, you know, the acquiescence argument I think is interesting because I can acquiesce to somebody bringing in something onto the work premises. But I don't acquiesce into every possible thing that they could do or manner or means in doing it. For example, I could acquiesce to my employees bringing in Christmas decorations to decorate their office cubicles. But if somebody's going to bring in a seven-foot Christmas tree put in the foyer area by their office and they're carrying it in and fall down the stairs, have I acquiesced in that because they've done something that's a little bit strange, bringing in a tree like that? And I relate to this case in this way. Obviously, we don't have comparative fault. But we have a situation here where we've got a landing, one step, and a hallway. And the lady's carrying in these two plastic containers. She chooses to carry them knowing that everyone who's carried these things know that they slide around. If you do it in your own house, you know these things slide. She chooses to do it that way. Have we acquiesced in this condition? Is it a dangerous way to bring it in? I don't know. You can make that argument. But just because you say, hey, you can bring stuff onto the premises or we're not going to object to you bringing things onto the premises, it doesn't mean that you acquiesce into every possible way they can do that. And I think that has some application here. Well, I mean, you work in offices, Mr. Elward, your adult life. When they have these kind of office parties, people are kind of expected to do their share, aren't they? No, our office is very clear that they send out memorandums that you are not expected to do anything and that you are doing this on your own voluntarily. Oh, well, you know what I'm talking about. You've got a group of secretaries and the firm acquiesces in them having these kind of parties and they bring in baked goods. But that's my decision if I want to contribute or not. I can decide not to do that. It's a voluntary action on my part. You know, I decorate my office for Christmas and bring in a Christmas tree. I have model aircraft that I've done. They're very expensive. And I guarantee if I'm carrying one of those in on my own at $200 or $300 apiece and it starts to fall, I'm going to focus on trying to catch that. And if I fall coming down the stairs carrying that model aircraft, that's not Kyle Royster's fault. That's my fault. You would agree, though, that at some point, and I'm not suggesting this is the case here, but at some point there could be a practice or an established institutionalized acquiescence to a practice that would allow for recovery. And I'm just going to suggest something here along the lines of the baked goods that the claimant brought in. Let's suppose in this law office that it had been done for years where every week a different office worker would be responsible for bringing cookies in to put on the counter for anyone's consumption, including clients. The law firm, the managing partners never sent anything out saying this is required, never sent out anything expressly condoning the policy. It had just been done for a long time. That acquiescence could support a policy. Don't you agree or wouldn't you agree to that? If I were to agree with that, I would agree with that only with respect to providing something brought in by the employees to the clients. I think that's a very distinguishing factor we do not have here. And so I would not agree in that situation that it would apply here. So if those cookies were back in the break room and only for consumption by employees, that's where you would draw the line because now they're not for client consumption. It's strictly for in-office consumption. I think that's definitely one way. What about the general argument that she makes that I suppose she's making the argument it's incidental to the work duties because in doing so it boosts the morale or the collegiality of the office. Does that make a difference? I think we head down a terrible slope if we go in that direction. I think we're going to expand. We're going to have case after case after case before this report on this or the response is going to be strict. No objects are to be brought on the premises other than work-related objects. You're going to have a very strict response by employers in a situation like this. That's what I suggest. You can see a reaction here. Absolutely. My office would have that reaction and we would have that within two weeks of the decision. Would that be bad? I can guarantee it. Would that be bad? I think it would. Well, you don't want to go to work and not have a nice work environment or a happy work environment. Now you're going down into the morale area, right, when you said that. Well, is employee morale sufficient to create employer benefit? I would say in this situation it's not a line that we want to cross and say that that's black. It depends on who's doing it. If you have a human resource director who's responsible for making sure that employee morale is high at all times and what that employee does in furtherance of those job duties is going to be covered by the act. I think that would be a much better case. A legal secretary is, you know, I have difficulty distinguishing this between, what do you call it, to pass a plate out in some sections of the state where you have little parties and people bring a plate to pass. We don't do that in Chicago, but I've given it a read. Other areas. But anyway, if an employee brings on a Friday something to eat and a plate to pass to other employees, is that going to be work-related? How is it different than an employer permitting employees to bring a brown bag to work and eat at their workstation? That certainly benefits the employer because they're not out at McDonald's for 15 minutes or 40 minutes longer than their lunch break. The employer has them inside. Is that going to be recoverable if they trip with their brown paper bag coming in the back door? I mean, I don't know. I think those are valid concerns. And when we talk about what benefits, whether they're going to say goodwill is enough to create a benefit, confer a benefit on the employer. Well, I don't think that's what the designers of this act intended, that somebody bringing in something to share with their coworkers is going to be a compensable act associated with the work, absent the situation that you pointed out with the HR person. That might be a different situation. But I would say this. When we look at the other cases that have looked at the employer benefit, they put it in terms of dollars. You pointed out, Your Honor, about the Lubin case. There was a benefit. There was testimony. No question that goodwill was for the benefit of the real estate company. And there's no question in the other case, the Penagos case that they cited, that they were encouraging the belly dancers to sit with the customers who would then spend money, more money, and they would buy the employee drinks. They would buy the employee food. That was money spent in the employer's premises with the direct financial benefit. We don't have any of that here. And that's why I kept pointing out when you made that hypothetical about the situation of if you were going to have people acquiescing and bringing in food items that are going to be shared with the clients of the firm, that's a different situation. We start moving closer to the cases that they cited. And we don't have that here. This is simply a lady bringing in something because they wanted to welcome somebody back. It's not employer-authorized. It wasn't directed to do it. There's no evidence in this record that the employer was doing a celebration to welcome them back. There's no evidence that the employer required this. This should be, in my mind, this is a clear-cut case. This is not compensable. This is something that somebody voluntarily did and it went back. So your analysis is it's a voluntary act? Yes. Right? Voluntary act. Okay. And so voluntary acts, black-letter law, would not result in compensability, correct? I think that, yes, I would agree with that. Unless, which is being argued here because there's no argument, I don't believe that it's not a voluntary act. Unless you can find some advancement of the employer's interests. I think it has to be. Would you even say that is permissible? I would think the next step would be is there something that we can look at that says that this activity was reasonably related to something she was doing incidental to her employment. And when we look at CISPRO and CISPRO says what is a risk incidental to employment, it's a risk that belongs to or is connected with what the employee has to do in fulfilling her duties. And that's where we come back to her working as a legal secretary. Her duties are not to encourage morale in the office. It's nice. Am I happy if I don't have a donut that I find in the kitchen? Of course I am. But that's not a compensable situation for the person bringing in the donut who falls during the box. Well, in this case, she's an 81-year-old legal secretary who's worked there for 25 years. And the testimony is that she regularly brought these baked goods in and everybody knew that she did. I mean, you could infer from that that she was in part responsible for the morale of the office. Oh, I don't know. I would disagree with that. I would disagree with that completely. I mean, I would hate to see a law come down that would encourage people to look at a person's age and say, well, they're older and have infirmities, and so therefore we have to treat them differently. That's not an area we want to go. The law here is clear. I think you could get there from that. The law here is clear. And I think you identified the problems. If we start going down the path that they want to go, we're going to have to qualify these cases and come up with exceptions, and it's just going to be more litigation. This is simply an act that she did on her own. Can I ask you a question? Yes, sir. If you were at work and you went into wherever you have your coffee machine or something like that, and you got a donut that had been provided by, you know, the law firm buys, and you bit into the donut and broke your tooth, would that be compensable? Under the personal comfort doctrine? Well, personal comfort. And then my question is, if it is, how is it different than the guy tripping who brought the donuts into the building? Well, personal comfort, first of all, goes to our rising out analysis, and I think the Circuit City case is clear about that. You still have to have an activity arising out of. You know, I guess if you look at Circuit City and you say, well, how did that notion of arising out of analysis fit in the course of analysis? Well, the court applied the Good Samaritan doctrine. They said we still have to find how does this arise out of the employment. And they said in that case we had an employer-provided vending machine that was defective based on the evidence of numerous people. We have an employer-provided donut that you bit into and broke your tooth. That may be a different story. I have not analyzed it. If that's recoverable, then when the person who brings the donuts in trips and falls at the door, why is it different? We don't have a defect. If you're going to say that the donut has got a defect, that's a different situation than here. Than tripping and falling while you're carrying them? Pardon me? Than tripping and falling while you're carrying them? You have to have a defect. And the commission found that there was not a defect here. No, there's not a defect in the premises. What I'm saying is if someone's bringing the box of donuts in and falls because they're carrying a box of donuts, they don't recover, but you do if you bite into it and break your tooth. Well, the difference would be if you were to go to the analysis with the donut with a defect in it, you could argue that that was a defect of arising out of association with it. If you're looking at the individual carrying the box, the difference is it's a voluntary act. They have not been ordered to do it, and they haven't encountered a defect in the premises. The analogy would be the donut with a defect versus an individual walking down the stairs with a defective tread. Oh, no, that's entirely different. I don't think it is. That's not even appropriate. I don't think it is because you're looking at what was the cause of the defect. No, I understand that. But the trip and fall and the defect, we don't even care about the donuts. We care about the defect on the floor. But my question is one person recovers under the personal comfort doctrine, and the other person who's bringing in the comfort with the employer's acquiescence doesn't recover. Well, the personal comfort doctrine, I can't – if you're seeking personal comfort and I try to assist you, I can't utilize that on my own benefit. I can't take advantage of that doctrine unless I'm the one trying to seek the personal benefit. And so that wouldn't apply in this situation. Wasn't she trying to seek a personal benefit by bringing in these goods? You know, with her employees? So that gets us in the course of we still don't have a rising up. They're different annals. Mr. Elwood, your time is up. I appreciate it. We would ask you to affirm the committee's decision. Thank you. Ms. Loeb, you may reply. Well, there was one point that was raised I thought was very interesting. Cordia asked if it would be different if her duties were as an HR personnel to promote goodwill among employees. Well, I'm a lawyer. My job isn't to promote the goodwill among my employees, but I certainly need to do that daily in order to see to it that my work gets done in the office. I need to make sure my secretary is happy or feels comfortable in her environment. Otherwise, nothing is going to get done that day. And I think that these office parties, we've all seen them go on, and I think they are very important aspects of the morale, and it helps conduct a productive office is all I can say. Thank you. Okay. Thank you. Thank you, Council, both, for your arguments in this matter this morning. It will be taken under advisement and written disposition. We'll issue it.